RAMÓN VILLA RODRÍGUEZ, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; CARLOS NICOLE, employer.

No. 353. Argued December 10, 1945.—Decided January 18, 1946.

*Bauzá & Bauzá* for petitioner. *A. de Jesús Matos* and *A. Sandín* for State Insurance Fund.

528

Mr. Justice Snyder delivered the opinion of the court.

The Workmen's Accident Compensation Act of 1935 provided that in a death case the beneficiary shall receive from one to three thousand dollars, "which shall be graduated according to the earning capacity of the deceased workman or employee and to his probabilities of life, in accordance with such rules as the Manager of the State Fund shall prepare, which rules shall have the force of law after they are approved by the Industrial Commission and by the Governor, and promulgated in accordance with law." Section 3, paragraph 5, Act No. 45, Laws of P. R., 1935, p. 251.

Pursuant to paragraph 5, a set of rules was promulgated. Rule 2 thereof provides that "The compensation which corresponds to the factor of 'Earning Capacity' shall be determined in accordance with the daily wage which the deceased workman or employee earned the day of the accident which resulted in his death."[1]

The said rules also contain a table for calculation of the compensation. Under the table two separate figures are evolved. One figure is obtained by giving maximum compensation of $3,000 to 18-year old workers and graduating the compensation to the minimum of $1,000 for those 45 years of age. The second figure is reached by a similar graduated process based on the daily pay of the worker, who receives the maximum compensation if he is paid $4.50 a day. The two figures are added together and divided by two in order to obtain the compensation awarded.[2]

In the instant case the Administrator found that the workman who was killed in the course of his employment was 39 years of age and made 30¢ an hour for an eight-hour day, or $2.40 daily. Applying Rule 2 and the aforesaid table, the Administrator awarded $1,697.22 to the mother of the worker

---

[1] De Jesús Matos, Los Accidentes del Trabajo, Apéndice B, p. 209.

[2] Paragraph 5 of § 3 was amended by Act No. 284, Laws of P. R., 1945, to increase the minimum and maximum compensation. Consequently, a new table has been put into effect. However, the problem herein remains unaffected.

as his beneficiary. This action was affirmed by the Industrial Commission. We granted the petition of the beneficiary to review the decision of the Commission.

The workman was a truck driver's assistant who was killed while the truck in question was being loaded at San Juan. He went to work at 7:30 A.M. and the accident occurred at 11 A.M. The workman was scheduled to make the trip to Mayagüez for which the truck was being loaded. Although the testimony is conflicting as to the time the truck and its trailer departed for Mayagüez, it is not disputed that such a trip normally took seven hours. The beneficiary therefore contends that if the accident had not occurred, the decedent would have worked at least 10½ hours.[3]

Whatever may be the exact figures as to the number of hours the employee would have worked and the rate of pay he would have received,[4] the beneficiary asserts that the day's pay would have been higher than $2.40, the pay for an eight-hour day at 30¢ an hour, if the accident had not occurred. She therefore contends that a figure higher than $2.40 should have been used in making the award.

In making this argument, the beneficiary relies on paragraphs 2, 3, and 4 of § 3 of Act No. 45 as well as paragraph 5, which has already been quoted. Paragraphs 2, 3, and 4 provide that in the event of temporary. permanent partial, or permanent total disability, respectively, the workman shall

---

[3] As in other phases of this case, the testimony on this point is difficult to follow. It is never made clear whether the workman had any duties on the way to Mayagüez, although it is apparently conceded that he was scheduled to make the trip and would have been paid therefor. Yet there was testimony that under some circumstances the driver took along money and hired someone at the destination point to help unload the truck. The record is silent on whether such temporary help was in addition to or in lieu of the workman herein.

[4] The testimony is fragmentary and confusing on both these points. It is difficult to tell whether the representative of the employer meant to testify that the latter always paid time and a half after eight hours a day, or only after a forty-hour week, as required by the Federal Labor Standards Act. Moreover, under insular law, the employee was entitled to receive double pay for the ninth hour and ordinary pay thereafter under a contract calling for work at 30¢ an hour for an eight-hour day. *Avellanet v. Porto Rican Express Co.*, 64 P.R.R. 660, 664.

receive weekly compensation over varying periods of time. However, these three paragraphs have one provision in common: the compensation shall be a sum "equal to one-half the wages which he received or, but for such accident, would have received on the day of the accident . . . "[5]

Despite the fact that paragraphs 2, 3, and 4 apply in terms to disability cases only, the beneficiary relies on them here. And she argues that, under their provisions as well as under paragraph 5, what the workman would have received but for the accident is determined by adding the time he worked to the time his replacement worked on the day of the accident.

The Administrator does not comment on the contention of the beneficiary that paragraphs 2, 3, and 4 apply to a death case; indeed, in writing Rule 2 as quoted above, the Administrator attempted to make the rule for death cases substantially similar to that provided in the statute for disability cases. The Administrator therefore does not differentiate between disability and death cases. His argument is in a different direction. He contends that in view of Act No. 49, Laws of P. R., 1935, Special Session (p. 538), it must be presumed that the employee would not have worked more than eight hours. His argument is that the legal limitation of an eight-hour work day prevents the use of a longer period in making the calculation unless it is shown that the accident actually occurred during extra work hours. In that event, the Administrator asserts that he uses extra hours actually worked in his calculations, but not otherwise.

The theory of the Administrator is that working eight hours depends on the will of the worker, who never has the opportunity to exercise it if he is killed or hurt during the first eight hours of work. The Administrator therefore refuses to take into account the hours worked by the replacement of the injured workman if adding both figures together

---

[5] Paragraphs 2, 3, and 4 were amended by Act No. 284 of 1945 to increase the compensation but the amendments do no affect our problem.

results in a working day of more than eight hours.  He asserts in effect that without differentiating between death and disability cases he always calculates the compensation on the basis of a working day not exceeding eight hours if the injury occurred, as here, prior to the close of the eighth hour.  However, for reasons to be presently noted, we find it unnecessary to choose between the conflicting theories of the Administrator and the beneficiary, at least in this particular case.

Both the beneficiary and the Administrator are mistaken as to the theory on which this case must be decided.  They have both overlooked the distinction which the Act draws between disability and death cases.  In a disability case the statute provides that the pay the workman actually received or would have received the day of the accident is the measuring rod of his compensation.  This is not true in a death case.  In the latter event the statutory test is different: the earning capacity of the decedent workman.

■■ In formulating Rule 2, the Administrator assimilated death cases to disability cases: compensation in both instances is calculated by him on the basis of the pay the worker received or would have received on the day of the accident.  But although this is required by the statute in disability cases, it is neither required nor authorized in death cases.

Paragraph 5 provides, as we have seen, that in death cases compensation shall be graduated according to the earning capacity of the decedent workman.  And, generally speaking, we can see no objection to the use of daily earnings to determine earning capacity.  It was therefore proper to include in the rules promulgated pursuant to paragraph 5 the table providing for graduated compensation based on daily earnings.

But in permitting the use of daily earnings to determine earning capacity, we must bear in mind that earning capacity means ability to earn, not simply what was actually earned

on a particular day. Consequently, when Rule 2 provides that daily earnings are determined in every instance by ascertaining the amount the workman actually received the day of the accident, it departs from the statutory requirement that compensation shall be graduated according to earning capacity. That is to say, the Administrator and the Commission have erred, in operating under the concededly valid table, when they automatically used as the earning capacity of the workman the amount he earned or would have earned on a particular day, the day of the accident. That figure might or might not reflect his earning capacity; only further inquiry could disclose the true facts. If the workman worked more than one day, the pattern of his daily earnings over a longer period, including overtime, if any,[6] must be examined to determine his daily earnings which in turn is the key to his earning capacity.

We recognize that for many, if not most, workers, particularly in the case of unskilled labor, an eight-hour day at a specified hourly rate will normally be the touchstone of earning capacity.[7] But the Administrator and the Comission must take some steps to satisfy themselves that those are the facts in the particular case before them. The pay the workman was scheduled to receive for the day of the accident must be typical for it to govern; it cannot be accepted automatically, as investigation might disclose that it was more—or less—than the worker generally earned. Compensation in a death case, in view of the statutory formula, can-

[6] Overtime pay would be included only if the figures revealed that it occurred so frequently that it must be concluded that a typical day included a certain amount of overtime. (See Campbell, infra, § 1004, p. 878; Horovitz, infra, p. 266.) The test is to find an average day's earnings—it might be four, eight or twelve hours' work, depending on the history of the particular workman involved.

[7] This becomes even more evident when we bear in mind that the range of compensation provided in the table si between 50¢ and $4.50 a day. Even at the maximum figure a workman within this bracket is not likely to have an earning capacity which fluctuates to any considerable extent.

not be predicated on the fortuitous circumstance of a higher—or lower—rate of pay on the day of the accident rather than the figures show he averaged daily over a longer period. See Campbell, Workmen's Compensation,' vol. I, § 991; Schneider, Workmen's Compensation Law, Second Edition, vol. II, §§ 429–38; Horovitz, Injury and Death Under Workmen's Compensation Laws, pp. 262–67; cf. *Montaner* v. *Industrial Commission*, 52 P.R.R. 891, 899.

In short, the Legislature set up a somewhat rigid formula for disability cases from which the Administrator and the Commission cannot deviate.[8] But the Legislature has established a more flexible rule for death cases. And it is the duty of the Commission in death cases to take into consideration wage data, if it exists, other than the pay the workman received or would have received the day of the accident. Only in this way can there be compliance with the legislative mandate that compensation in death cases shall be based on earning capacity. It follows from what we have said, that Rule 2 is in conflict with the statutory standard and is therefore invalid.

The decision of the Commission will be reversed and the case remanded for the taking of additional testimony, if it is available, as to the daily pay of the workman for a reasonable period prior to the accident, and for further proceedings not inconsistent with this opinion.

---

[8] We have already noted that the problem of whether the time beyond eight hours worked by the replacement of the injured workman must be used by the Administrator in calculating compensation in a disability case is not before us and therefore cannot be decided in this case.